IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| LORI R.,[1] | Case No. 1:22-cv-01595-JR |
| Plaintiff, | OPINION & ORDER |
| v. | |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

RUSSO, Magistrate Judge:

Plaintiff Lori R. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Title II Disability Insurance Benefits[2] and Title XVI Supplemental Security Income under the Social Security Act ("the Act"). All parties have consented to allow a Magistrate Judge to enter final

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the nongovernmental party in this case.

[2] Plaintiff later withdrew her Title II claim, so the Court analyzes only whether the ALJ supported his decision to reject plaintiff's application for SSI with substantial evidence.

1 – OPINION & ORDER

orders and judgement in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). ECF No. 21. For the reasons set forth below, the Commissioner's decision is affirmed and this case is dismissed.

## PROCEDURAL BACKGROUND

Born in February 1971, plaintiff alleges disability beginning June 28, 2019,[3] with a date last insured of September 30, 2006. Tr. 108, 184. Plaintiff alleged disability due to nerve damage in her left arm, issues with her right hand, a broken back, and diverticulitis. Tr. 413. Her application was denied initially and upon reconsideration. Tr. 224-44. On June 8, 2021, plaintiff appeared at an administrative hearing before Administrative Law Judge ("ALJ") Bryan Henry. Tr. 117-64. On June 25, 2021, the ALJ issued a decision finding plaintiff not disabled. Tr. 92-116. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 1-7.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity since November 23, 2004, the initial alleged onset date. Tr. 98. At step two, the ALJ determined the following impairments were medically determinable and severe: "diverticulitis, status post sigmoidectomy and bowel resection with colostomy; nondisplaced transverse process fracture of the lumbar spine; and degenerative disc disease of the lumbar spine." Tr. 98. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 99.

---

[3] Despite acknowledging that plaintiff amended the alleged onset date from November 23, 2004, to June 28, 2019, Tr. 95, the ALJ evaluated plaintiff's claim from her initial alleged onset date of November 23, 2004. *See* Tr. 109. On appeal, plaintiff only challenges the ALJ's decision concerning disability beginning June 28, 2019.

Because plaintiff did not establish presumptive disability at step three, the ALJ continued to evaluate how her impairments affected her ability to work. The ALJ resolved that plaintiff had the residual function capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.967(b) except:

> she would be limited to occasional climbing of ramps and stairs; never climbing of [sic] ladders, ropes, or scaffolds; frequent balancing; occasional stooping, crouching, kneeling, and crawling; no exposure to unprotected heights or moving and dangerous machinery: simple routine repetitive tasks; use of restroom as needed but would be off task less than five percent of the normal work day in addition to normal breaks during the work day.

Tr. 21-22.

At step four, the ALJ determined the claimant was unable to perform any past relevant work. Tr. 108. At step five, the ALJ found there were other jobs existing in significant numbers in the national economy that plaintiff could perform such as cashier II, sales attendant, and housekeeping cleaner. Tr. 109. The ALJ therefore found plaintiff not disabled from November 23, 2004, through the date of the decision. Tr. 109.

## DISCUSSION

Plaintiff argues the ALJ committed two harmful errors in his written opinion. She contends the ALJ erred by (1) discounting her testimony without a clear and convincing reason for doing so, and (2) improperly discounting the lay witness testimony of her mother. For the reasons that follow, the Court finds the ALJ did not err, and affirms.

**I.  Symptom Testimony**

Plaintiff first contends the ALJ erred by discrediting her testimony about back pain, diverticulitis, and the limitations these issues caused. Pl.'s Br., ECF No. 12 at 5-10. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of

malingering, "the ALJ can reject the claimant's testimony about the severity of ... symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion the claimant is not credible is insufficient; the ALJ must "state which ... testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, *available at* 2017 WL 5180304. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted). The question is not whether the ALJ's rationale convinces the court, but whether the ALJ's rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

Plaintiff testified at the hearing that diverticulitis is her most disabling condition. Tr. 138. She had several surgeries for this, including a colostomy reversal, which continues to cause issues. Tr. 138. Before the colostomy reversal, plaintiff had to empty her colostomy bag five to six times a day, which took twenty- to twenty-five minutes each time. Tr. 152. She had to change the bag completely three to four times a week, which took an hour to an hour and twenty minutes each time. Tr. 152. Since the reversal, she has had ongoing bowel problems; she has to take

MiraLAX and stool softeners for constipation, and she must be extremely careful about what she eats. Tr. 139, 142-43. Because of the MiraLAX and stool softeners, she experiences sudden urges to use the bathroom and sometimes does not make it in time. Tr. 143. She has difficulty putting on weight and is working with a nutritionist to help her to gain weight. Tr. 144.

Plaintiff testified that she could not work full time because she would need to use the restroom too frequently due to use of MiraLAX and stool softeners. Tr. 155-56. Plaintiff also testified to nerve damage in her left hand and a history of surgery on her right hand. Tr. 136. She experiences pain in her lower back and neck. Tr. 154. She takes Hydroxyzine for anxiety and Mirtazapine for sleep. Tr. 145. Plaintiff testified it had become more difficult for her to do things around the house. Tr. 152-53. She had difficulty standing for long periods and lifting things. Tr. 153. She could comfortably lift and carry seven pounds. Tr. 153-54. She had trouble sleeping because of pain. Tr. 155.

In written testimony, plaintiff reported a history of "multiple hospitalizations for Diverticulitis and removal of Lower colon." Tr. 451, 487. She eventually underwent sigmoid colectomy but was subsequently hospitalized again with complications, pain, and infection related to surgery and diverticulitis. Tr. 450, 451. She reported that "[c]omplications that are permanent have to do with increased frequency in use of restrooms and in immediacy of onset that is unpredictable and has led to soiling undergarments: 4 times in one day, as an example of recent occurrence." Tr. 451. She also experienced upper extremity symptoms impacting her ability to grip, as well as back pain that impacted her ability to sit or stand for long periods. Tr. 443, 451, 476, 477, 480, 481

The ALJ found plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and did not identify evidence of malingering. Tr. 106.

5 – OPINION & ORDER

However, the ALJ concluded that plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 106. Specifically, the ALJ found plaintiff's symptom allegations were inconsistent with objective medical evidence, and that plaintiff's daily activities conflicted with her symptom allegations. Tr. 106-08.

The ALJ reasonably discounted aspects of plaintiff's allegations of diverticulitis and arm and back pain as inconsistent with the record. Conflict with objective medical evidence is a sufficient basis for discounting a claimant's testimony. *Smartt*, 53 F.4th at 498; 20 C.F.R. § 416.929(c)(2). At the hearing, plaintiff testified her diverticulitis and back pain would make it impossible for her to maintain a full-time work schedule. *See, e.g.*, Tr. 138, 153, 155-56. The ALJ acknowledged that these were her two most disabling symptoms but pointed to several aspects of the medical record that undermined plaintiff's testimony about the severity of those symptoms. For example, plaintiff testified she could not work full time because she would need to use the restroom frequently due to use of MiraLAX and stool softeners. Tr. 155-56. The ALJ highlighted that plaintiff did not report any problems with her colostomy bag in medical records, Tr. 105, and that treatment with Miralax was effective and stable. Tr. 106. Following the colostomy reversal, plaintiff's medical records showed she was doing well, tolerating her diet, was stable, and in good condition upon discharge. Tr. 105, 2156. Furthermore, despite plaintiff's allegations regarding her back pain, the ALJ pointed to several physical examinations reflecting milder symptoms. Tr. 106. Specifically, the ALJ cited plaintiff's physical exams showing that she was well-developed and well-nourished, was in no acute distress, her neck was supple, her abdomen was normal, her extremities were normal, she had no motor deficits, and her gait was normal. Tr. 106 (citing, e.g., Tr. 521, 557, 560, 618-19, 622, 635, 643, 2156, 2165). These

records all conflicted with plaintiff's allegations of more significant limitations stemming from her back pain. In sum, these many unremarkable reports of plaintiff's gastrointestinal issues and back pain amount to substantial evidence supporting the ALJ's decision to discount plaintiff's testimony because her allegations conflict with the record.

Plaintiff urges the Court to adopt a different interpretation of the medical record, and argues the ALJ's opinion was overly vague, but does not undermine the substantial evidence supporting the ALJ's decision. Specifically, plaintiff argues the ALJ's analysis was simply a summary of the medical record that failed to "identify the testimony she found not credible, [and] link that testimony to the particular parts of the record supporting [his] non-credibility determination." Pl. Br. at 8 (citing *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)). As noted above, however, the ALJ specifically examine plaintiff's two primary allegations—that she would miss work time due to incontinence and back pain—and provided citations to the medical record specific enough to "show his work." *Smartt*, 53 F.4th 499. Plaintiff's arguments are an effort to have this Court re-weigh the evidence, which is beyond the scope of review. *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) ("We may not reweigh the evidence or substitute our judgment for that of the ALJ."). Even when there are two reasonable interpretations—plaintiff's and the ALJ's—the ALJ's interpretation must prevail. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld."). Against that backdrop, even though plaintiff clearly interprets the evidence differently, she has not (and cannot) establish error by simply advancing a different interpretation of the medical evidence. The ALJ adequately considered the evidence that supported plaintiff's allegations, identified medical evidence that conflicted with plaintiff's testimony about the extent and frequency of her

diverticulitis and back pain, and reasonably discounted those allegations in his written opinion. *See* Tr. 102-06.

The ALJ also discounted plaintiff's subjective symptom testimony because it was inconsistent with her own statements about daily activities. Tr. 100. Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills," or (2) where the activities "contradict [a claimant's] testimony." *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). The relevant regulations require an ALJ to consider a claimant's daily activities when evaluating subjective symptom statements. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). The Ninth Circuit has even found such routine activities as playing video games, using public transportation, and preparing meals to undercut a claimant's testimony of disabling limitations. *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021). A claimant need not be utterly incapacitated to receive disability benefits, however, and sporadic completion of minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity to be inconsistent with the claimant's alleged limitations to be relevant to her or her credibility).

The ALJ reasonably found several of plaintiff's reported daily activities conflicted with her allegations about back pain and diverticulitis. To discount a plaintiff's testimony, an ALJ must cite daily activities that "meet the threshold for transferable work skills" or "contradict [a claimant's] testimony." *Orn,* 495 F.3d at 639. Although plaintiff testified that she would do things for "five to ten minutes at a time before taking breaks," and that her back was "constantly hurting," Tr. 516, the ALJ noted that plaintiff elsewhere acknowledged she cared for her parents,

and performed a variety of household chores including vacuuming, cleaning, laundry, and cooking. Tr. 100, 132-33. The ALJ also noted that plaintiff had been walking 5 to 10 miles per day while working on the property where she lived. Tr. 105, 2098. Furthermore, plaintiff does not challenge this basis for the ALJ to discount her symptom testimony in her briefing. *See generally* Pl. Br., Pl. Reply. Because the ALJ reasonably cited several activities that conflict with plaintiff's allegations about the limitations caused by her back pain and diverticulitis, this was another clear and convincing reason for the ALJ to rely upon to discount her testimony.

## II.    Lay Witness Testimony

"Lay testimony as to a claimant's symptoms is competent evidence that the Secretary must take into account." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1) ("In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence from your medical sources and nonmedical sources about how your symptoms affect you."). Under the 2017 regulations, the ALJ is not "required to articulate how [they] considered evidence from nonmedical sources" using the same criteria required for the evaluation of medical sources. 20 C.F.R. §§ 404.1520c(d), 416.920c(d).

The ALJ must give reasons "germane to the witness" when discounting the testimony of lay witnesses*. Valentine,* 574 F.3d at 694. But the ALJ is not required "to discuss every witness's testimony on an individualized, witness-by-witness basis." *Molina*, 674 F.3d at 1114, *superseded on other grounds by* 20 C.F.R. § 404.1502(a). If the ALJ gives valid germane reasons for rejecting testimony from one witness, the ALJ may refer only to those reasons when rejecting similar testimony by a different witness. *Id*. Additionally, where "lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported

reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," any error by the ALJ in failing to discuss the lay testimony is harmless. *Id*. at 1117, 1122

Plaintiff's mother reported that plaintiff suffered from several health issues, including a broken back and severe nerve damage in her left hand and arm. Tr. 516. She had undergone a hysterectomy and bowel resection. Tr. 516. She still had a colostomy bag when plaintiff's mother provided the report. Tr. 516. Her conditions affected her ability to do everyday things on a regular basis. Tr. 516. She tried to do small tasks around the house to help, but at times, would end up in a lot of pain. Tr. 516. Her hands shook, and she had loss of strength. Tr. 516. She was sometimes unable to write because of the pain. Tr. 516. Her back was constantly hurting, and she had trouble sleeping and standing for extended periods of time. Tr. 516. She needed to rest constantly. Tr. 516. She would do things for five to ten minutes at a time before taking breaks. Tr. 516. She had trouble lifting and would leave groceries in the car. Tr. 516. Family members would stop by and help her with things. Tr. 516. It took her four to five times longer to do things than the average person. Tr. 516. Her colostomy bag was scarring, both physically and mentally. Tr. 516. She had to be near a restroom and did not go out because of the impact of MiraLAX on her bowels. Tr. 516. She struggled emotionally and felt worthless. Tr. 516.

The ALJ failed to analyze the lay witness testimony, but any error in failing to do so was harmless. Plaintiff's mother alleged similar limitations regarding diverticulitis and pain. *Compare* Tr. 138-56 (plaintiff's testimony) *with* Tr. 516 (plaintiff's mother's testimony). As discussed above, the ALJ provided legally sufficient reasons for concluding that plaintiff's testimony was unpersuasive. These reasons apply with equal force to the lay witness testimony.

Any error in rejecting the lay witness testimony was therefore harmless. *Molina,* 674 F.3d at 1117, 1122.

## CONCLUSION

For the reasons given above, the Commissioner's decision is affirmed and this case is dismissed.

IT IS SO ORDERED.

DATED this 22nd day of October, 2024.

    /s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge

11 – OPINION & ORDER